CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 16 2012
JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| REGINA GRADY CHRISTMAS, | ) |
| | ) Civil Action No. 3:12CV00008 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| THE ARC OF THE PIEDMONT, INC., | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

Regina Grady Christmas, proceeding pro se, filed this action against her former employer, The Arc of the Piedmont, Inc., asserting claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12117; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. The plaintiff also seeks to impose liability for intentional infliction of emotional distress and for painting her in a false light. The case is presently before the court on the defendant's motion to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The following facts, taken from the plaintiff's pro se complaint and her brief in opposition to the defendant's motion to dismiss, are accepted as true for purposes of the defendant's motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (emphasizing that "a judge must accept as true all of the factual allegations contained in the complaint" when ruling on a motion to dismiss, and that a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers") (internal citation and quotation marks omitted); Davis v.

Bacigalupi, 711 F. Supp. 2d 609, 615 (E.D. Va. 2010) ("In testing the sufficiency of the pro se Plaintiff's Complaint under Rule 12(b)(6), the Court will also consider the allegations made in the Plaintiff's memorandum filed in opposition to the Defendant's motion to dismiss . . . .") (citing cases).

Christmas is an African-American woman over the age of forty, who suffers from Ehlers-Danlos Syndrome. The events giving rise to the instant action occurred in April and May of 2009, when Christmas was employed by the defendant as a direct support professional. The defendant operates assisted living facilities for adults with intellectual and developmental disabilities in Charlottesville, Virginia.

In April of 2009, Christmas observed some of the defendant's patients being sexually and physically abused by her Caucasian co-workers. Christmas reported her observations to the defendant's human resources director and to the local department of social services.

Immediately after Christmas reported the abuse, the defendant removed her from working the overnight shift, which required less physical activity, and instead "forced her to work day shifts in order to keep her job." (Br. in Opp'n at 2.) Christmas alleges that the defendant's actions were taken "with the singular intent to drive her off of the job in retaliation for her reporting the abuse of patients." (Id. at 4.)

Although the change to daytime hours "irritate[d] her medical condition," Christmas continued to work. (Br. in Opp'n at 5.) In May of 2009, she was granted three weeks of FMLA leave to assist in caring for her ill husband. When she returned from leave, Christmas learned that she had been terminated. Christmas contends that the defendant "never informed [her] in writing or verbally that her employment . . . was terminated and allowed her to suffer the

2

humiliation of returning to a facility with the intent of resuming her duties post an unknown termination." (Compl. at 12.) She further alleges that the defendant never disciplined the Caucasian workers responsible for abusing the defendant's patients, and that "Caucasian employees who questioned or opposed wrongdoing that they witnessed on the job were not subject to the same treatment as the African-American employees who did the same." (Br. in Opp'n at 3.)

Christmas filed the instant action on December 28, 2011 in the Circuit Court for the City of Charlottesville. After removing the action to this court, the defendant moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion has been fully briefed and is ripe for review.[*]

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under this rule, the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words, the factual allegations (taken as true) must 'permit the court to infer more than the mere possibility of misconduct.'" A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

---

[*] The parties have advised the court that they do not wish to be heard on the motion to dismiss.

3

When a document is filed pro se, it must be "liberally construed." Erickson, 551 U.S. at 94 (internal citation and quotation marks omitted). Accordingly, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. Mindful of this principle, the court will consider both the plaintiff's complaint and her response to the defendant's motion in determining whether the plaintiff's allegations are sufficient under Rule 12(b)(6). See Davis, 711 F. Supp. 2d at 615; see also Gray v. Walmart Stores, Inc., No. 7:10-CV-171, 2011 U.S. Dist. LEXIS 5115, at *8 (E.D.N.C. May 12, 2011) (considering the pro se plaintiff's brief in opposition when ruling on the defendant's motion to dismiss) (citing cases).

## Discussion

### I. Title VII Claims

#### A. Retaliation

Count One of the plaintiff's complaint asserts a claim of retaliation under Title VII. In addition to prohibiting discrimination on the basis of an employee's race, color, religion, sex, or national origin, Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that the defendant took a materially adverse action against her; and (3) that a causal connection existed between the protected activity and the materially adverse action. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-406 (4th Cir. 2005).

Having reviewed the plaintiff's complaint and her brief in opposition to the defendant's motion, the court concludes that the plaintiff's allegations are insufficient to satisfy the required element of protected activity. Under Title VII, protected activities fall into two categories:

4

participation activities and opposition activities. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). The "opposition clause" of Title VII's anti-retaliation provision makes it an unlawful for an employer to discriminate against an employee because the employee opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The "participation clause" makes it unlawful for an employer to discriminate against an employee because the employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Id.

In the instant case, the plaintiff's retaliation claim is based solely on the assertion that she was treated unfairly "for reporting the abuse of the patients under her care." (Compl. at 3.) While physical and sexual abuse is indeed unlawful, it does not constitute an "unlawful employment practice" under Title VII. See 42 U.S.C. § 2000e-2 ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). Consequently, the plaintiff's complaints of abuse do not constitute "protected activity" under the statute, and her claim of retaliation must be dismissed.

### B. Discrimination

Christmas also asserts a claim of race discrimination under Title VII. To establish a prima facie case of discrimination, the plaintiff must show: (1) that she is a member of a class protected by Title VII; (2) that her job performance was satisfactory; (3) that she was subject to an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

5

Applying these elements, the court is constrained to conclude that the plaintiff has alleged sufficient facts to state a claim of race discrimination under Title VII. It is undisputed that Christmas is a member of a protected class and, thus, that her complaint satisfies the first element. Additionally, the complaint indicates that the plaintiff's job performance was satisfactory at all times relevant to the defendant's employment decisions. In this regard, Christmas alleges that she "never received any written or verbal warning, notice of discipline or any complaint from management that her work for the Defendant was unsatisfactory." (Compl. at 11.) Christmas also alleges that her employment was ultimately terminated and that she was treated differently than similarly situated employees from outside the protected class. In her brief in opposition, Christmas states that "Caucasian employees who questioned or opposed wrongdoing that they witnessed on the job were not subject to the same treatment . . . ." (Br. in Opp'n at 3.) Likewise, Christmas notes that the Caucasian employees responsible for abusing the defendant's patients were not investigated or disciplined.

Assuming the truth of the plaintiff's allegations, the court concludes that her claim of race discrimination is sufficient to withstand the defendant's motion to dismiss. Accordingly, the defendant's motion will be denied with respect to this claim.

## II. ADA Claim

Christmas next asserts that the defendant discriminated against her by failing to provide a reasonable accommodation under the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "'Discrimination' as used in the ADA prohibits not only disparate treatment because of an employee's disability, see id., but also the failure to make 'reasonable

6

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, id. § 12112(b)(5)(A) . . . ." Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 479 (4th Cir. 2010).

To establish a prima facie case of discrimination in a case of failure to accommodate, a plaintiff must show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (internal citation and quotation marks omitted). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, [and] working." 42 U.S.C. § 12102(2)(A).

Liberally construing the plaintiff's complaint and her brief in opposition, the court concludes that the plaintiff has offered sufficient factual allegations to satisfy each of the elements necessary to state a claim under the ADA. With respect to the first element, Christmas alleges that she suffers from a connective tissue disorder known as Ehlers-Danlos Syndrome, which is "marked by extremely loose joints[,] hyper-elastic skin that bruises easily and easily damaged blood vessels." (Br. in Opp'n at 2.) Christmas further alleges that the symptoms of the disorder, including "joint pain, skin tearing, flat feet, etc.," restrict her ability to lift, bend, stoop,

and walk. (Id. at 4.) At this stage of the litigation, the court concludes that the plaintiff's allegations of disability are sufficient to withstand the defendant's motion to dismiss.

With respect to the second element – that the defendant had notice of her disability – Christmas alleges that she was initially assigned to work the overnight shift at one of the defendant's facilities in order to accommodate her disability. Assuming the truth of this allegation, the defendant was on notice of her alleged disability and, thus, the plaintiff has satisfied the second element.

The third element of her accommodation claim requires Christmas to show that, with a reasonable accommodation, she could perform the essential functions of her position. In this regard, the plaintiff's allegations suggest that the defendant initially made a reasonable accommodation for the plaintiff in scheduling her to work the overnight shift, since the shift requires significantly less physical activity on the part of employees assisting the defendant's patients. See 42 U.S.C. § 12111(9)(B) (defining "reasonable accommodation" to include "modified work schedules"). The plaintiff's allegations further suggest that she had no difficulty fulfilling the requirements of her position while working that particular shift. Accepted as true, these allegations are sufficient to establish, at this stage of the litigation, that the plaintiff was able to perform the functions of her job with a reasonable accommodation.

Finally, the plaintiff must show that the defendant refused to make a reasonable accommodation. The plaintiff has satisfied this element by alleging that, after originally permitting her to work the overnight shift, the defendant "revoked" this accommodation and

8

instead required her to work the daytime shift, which "irritate[d] her medical condition." (Br. in Opp'n at 5.)

Given this court's obligation to accept the plaintiff's allegations as true, the court concludes that her ADA claim is "plausible on its face." Iqbal, 556 U.S. at 678. Accordingly, the defendant's motion must be denied with respect to this claim.

### III. ADEA Claim

Christmas also alleges that the defendant violated the ADEA by "discriminating against a worker over the age of forty (40)." (Compl. at 3.) To establish a prima facie case of discrimination under this statute, a plaintiff must show: (1) that she a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was performing her job satisfactorily at the time of the action; and (4) that she was replaced by someone outside the protected class or treated more harshly than similarly situated younger employees. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

Having reviewed the record, the court agrees with the defendant that the plaintiff has failed to allege sufficient facts to state a claim of age discrimination. Aside from the conclusory assertion quoted above, neither her complaint nor her brief in opposition makes any additional reference to this claim. Consequently, in the absence of any allegations which would establish that the plaintiff was replaced by a younger employee, or that similarly situated younger employees were otherwise treated more favorably, the court is constrained to conclude that the defendant's motion must be granted with respect to this claim.

9

## IV. FMLA Claim

In her final claim under federal law, Christmas alleges that the defendant violated the FMLA "when they terminated her employment while she was on properly applied for and granted [FMLA] leave." (Compl. at 3.) In moving to dismiss this claim, the defendant argues that the claim is barred by the applicable statute of limitations, since it accrued more than two years before the plaintiff filed the instant action. The defendant also argues that the plaintiff's allegations are insufficient to state a plausible claim for relief.

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]." 29 U.S.C. § 2615(a). "This prohibition includes retaliatory discharge for taking leave." Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007). While FMLA claims are generally subject to a two-year limitations period, claims based on "willful" misconduct are subject to a three-year limitations period. See 29 U.S.C. § 2617(c)(1) and (2). "A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." Settle v. S.W. Rodgers Co., No. 98-2313, 1999 U.S. App. LEXIS 15745, at *9 (4th Cir. July 12, 1999) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132-135 (1988)). Mere negligence is insufficient. Id.

In this case, Christmas alleges that the defendant agreed to permit her to take three weeks of FMLA leave to care for her ill husband, yet terminated her employment without justification while she was on leave. Assuming the truth of the plaintiff's allegations, the court concludes that the plaintiff has stated sufficient facts to plausibly suggest that the defendant showed reckless disregard as to whether its conduct was prohibited by the FMLA. Accordingly, the issue of

10

whether the alleged conduct was "willful" and, thus, subject to a three-year statute of limitations, must be decided on summary judgment, if there is no genuine issue of material fact, or by a jury, if the plaintiff introduces evidence sufficient to support a finding of willfulness.

Setting aside the statute of limitations issue, the court also concludes that the plaintiff's allegations in support of her FMLA claim are sufficient to withstand the defendant's motion. In order to make out a prima facie case of retaliation under the FMLA, a plaintiff must establish "that [she] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (internal citation and quotation marks omitted).

In this case, the plaintiff alleges that she engaged in a protected activity by taking FMLA leave; that she was terminated and, thus, suffered an adverse employment action; and that the termination occurred during the period that she was on the requested leave. "While evidence as to the closeness of time [between an employee's absence and her termination] 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" Id. (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). For these reasons, the defendant's motion must be denied with respect to the plaintiff's FMLA claim.

V.  **State Law Claims**

In addition to her claims under federal law, Christmas asserts two claims under state law: a claim for intentional infliction of emotional distress and a claim that the defendant "painted her

11

in false light." (Compl. at 4.) For the following reasons, the court agrees with the defendant that both of these claims are subject to dismissal.

Under Virginia law, a claim for intentional infliction of emotional distress is subject to a two-year statute of limitations. See Va. Code § 8.01-243(A). The claim "accrues and the time limitation begins to run when the tort is committed." Mahony v. Becker, 435 S.E.2d 139, 141 (Va. 1993). In this case, the plaintiff's claim of intentional infliction of emotional distress accrued in May of 2009, when she was terminated by the defendant. Because the instant action was not filed until December of 2011, the claim is barred by the statute of limitations. Accordingly, the defendant's motion will be granted with respect to the plaintiff's claim for intentional infliction of emotional distress.

The plaintiff also alleges that she was painted in a false light by the defendant. As the defendant emphasizes, however, this particular cause of action is not recognized in Virginia. See WJLA-TV v. Levin, 564 S.E.2d 383, 395 n.5 (Va. 2002). Consequently, this claim is also subject to dismissal.

## Conclusion

For the reasons stated, the defendant's motion to dismiss will be granted in part and denied in part. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This _16th_ day of July, 2012.

_/s/ Glen Conrad_
Chief United States District Judge