CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 27 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| REGINA CHRISTMAS, ) | |
| ) | Civil Action No. 3:12CV00008 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| THE ARC OF THE PIEDMONT, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

This pro se employment discrimination action is presently before the court on the defendant's motion for summary judgment and the plaintiff's motion for leave to amend her complaint. For the reasons set forth below, the defendant's motion will be granted and the plaintiff's motion will be denied.

## Background

The Arc of the Piedmont ("the Arc") is a nonprofit corporation that provides services to citizens of the City of Charlottesville and surrounding counties, who suffer from intellectual and developmental disabilities. The services are provided through educational programs, residential programs, group homes, and in-home care.

In February of 2007, Regina Christmas was hired to work for the Arc as a Direct Support Professional ("DSP"). Christmas is an African-American woman who suffers from Ehlers-Danlos Syndrome. She initially provided in-home care for the Arc's clients. In June of 2007, she was transferred to a full-time DSP position in one of the Arc's group homes located at 1014 Locust Avenue in Charlottesville ("1014 Locust"). At the time of the transfer, 1014 Locust had six disabled residents residing in the home on a full-time basis.

When Christmas transferred to 1014 Locust, she filled an overnight position known as the "sleep position." The Arc scheduled two DSPs to work the overnight shift, one of whom was permitted to sleep while the other DSP remained awake. The purpose of the sleep position was to have another employee available for back-up assistance. There were only six sleep positions with the Arc, all of which were in group homes. Two of the positions were at 1014 Locust.

On April 11, 2008, Christmas received permission to move from full-time status to relief status, so that she could pursue outside employment with another home health agency. She returned to work for the Arc on a full-time basis on February 1, 2009. Upon her return, Christmas again filled a sleep position at 1014 Locust.

Approximately a month and a half before she returned, two of the residents at 1014 Locust moved out of the group home to pursue independent living. Consequently, there were only four residents living in the group home when Christmas returned in February of 2009. The Arc ultimately decided that it was in the best interests of its clients to limit the home to four residents.

On May 22, 2009, Christmas requested three weeks of leave under the Family Medical Leave Act to care for her husband, who was experiencing medical problems. When Christmas decided that she was ready to return to work, both sleep positions at 1014 Locust had been eliminated. The other eliminated sleep position was held by Thomas Williams, a 35-year-old white male employee.

At the time that Christmas returned from leave, the four remaining sleep positions at other group homes were already filled. Christmas was offered a 6:00 a.m. to 9:00 a.m. shift that she declined to accept.

2

Christmas continued to work as a DSP after she returned from FMLA leave. Although she was not assigned to a permanent shift, she filled in at 1014 Locust and other locations operated by the Arc. She voluntarily resigned on January 31, 2010.

On March 19, 2010, Christmas filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was "constructively discharged" because of her disability and age. (Docket No. 17-7 at 3.) Christmas did not assert a claim for race discrimination or check the box indicating that a race discrimination claim was being pursued.

As part of the EEOC process, the parties participated in the agency's mediation program. On June 3, 2010, Dr. George A. Bates sent a letter advocating on the plaintiff's part to Irma Dillard, the EEOC mediator. The letter stated, in pertinent part, as follows:

> In reviewing Mrs. Christmas's scenario, it is clear that she was terminated while on leave under the Family Medical Leave Act (FMLA). Also, she suffered retaliation which is a violation of Title VII of the 1964 Civil Rights Act (CRA) when she reported abuse of patients under her care by ARC of the Piedmont co-workers. Lastly, it is obvious that the ARC ha[s] no (or very few) African-Americans in management in disproportion to the number of blacks on Staff in [its] facilities. Therefore, Mrs. Christmas has every right to allege racial discrimination based upon the unequal treatment of blacks by the ARC and the level of nepotism that exist[s] within this employer's ranks. Please inform the ARC of Mrs. Christmas's amended claims.

(Docket No. 17-8). Christmas, however, did not amend her charge of discrimination.

After the EEOC issued a dismissal and notice of right to sue, Christmas filed the instant action on December 28, 2011 in the Circuit Court for the City of Charlottesville. In her complaint, Christmas asserted claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination in Employment Act of 1967 ("ADEA"); and the Family Medical Leave Act of

3

1993 ("FMLA"). The plaintiff also sought to impose liability under state law for intentional infliction of emotional distress and for painting her in a false light.

Upon removing the case to this court, the Arc moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 16, 2012, the motion was granted in part and denied in part. The claims that remain are as follows: (1) the plaintiff's claim that the Arc violated Title VII by discriminating against her on the basis of race; (2) her claim that the Arc violated the ADA by rescinding a reasonable accommodation; and (3) her claim that the Arc violated the FMLA by eliminating her position at 1014 Locust while she was on FMLA leave. The case is presently before the court on the Arc's motion for summary judgment, and the plaintiff's motion for leave to amend her complaint to include a federal tort claim against the EEOC and Irma Dillard.

## Discussion

### I. Motion for Summary Judgment

The Arc has moved for summary judgment on the remaining claims. An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Id. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

4

A.   **Title VII**

To the extent Christmas claims that she was subjected to race discrimination in violation of Title VII, the Arc argues that such claim must be dismissed because it was not administratively exhausted. Before a plaintiff may file suit under Title VII, the plaintiff must first file an administrative charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred," or with a state agency within 300 days of such practice. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The contents of the EEOC charge frame the scope of any future litigation. Id. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the claim. Jones, 551 F.3d at 300.

In this case, the plaintiff's EEOC charge alleged that she was constructively discharged because of her age and disability. Christmas did not check the box for race discrimination on the charge form, or mention race in the narrative explaining her charge. Thus, the charge did not suggest that the Arc had discriminated against her on the basis of race, or otherwise allege facts that would have put the Arc or the EEOC on notice that she was charging the Arc with race discrimination. Accordingly, the court concludes that the plaintiff's race discrimination claim "is not reasonably related to her charge such that it would have been expected to follow from an investigation of [her other claims]." Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005); see also Jones, 551 F.3d at 300 (observing that "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim

5

alleges discrimination on a separate basis, such as sex"); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (holding that an EEOC charge alleging race discrimination would not have reasonably led to an investigation of sex discrimination).

In her brief in opposition to the motion for summary judgment, Christmas appears to contend that, in determining whether she exhausted her administrative remedies, the court should also consider the letter that Dr. Bates sent to the EEOC mediator. That letter, however, was mailed more than two months after the plaintiff filed her charge of discrimination and was not copied to the Arc. Under existing precedent, the court is unable to conclude that the private letter to the mediator suffices to satisfy the exhaustion requirement. See Miles, 429 F.3d at 492 (holding that a private letter, sent five months after the original charge and without being copied to the employer, was insufficient to meet the administrative exhaustion requirement); Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (emphasizing that "[i]t would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it"). Accordingly, the court concludes that the claim of race discrimination under Title VII is subject to dismissal for lack of subject matter jurisdiction.

Even if the court had jurisdiction over the claim of race discrimination, the Arc would nonetheless be entitled to summary judgment. In the absence of any direct evidence of intentional discrimination, the plaintiff's Title VII claim is analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Under this framework, a plaintiff demonstrates a prima facie case of race discrimination by showing (1) that she is a member of a

6

protected class; (2) that she suffered an adverse employment action; (3) that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) that the position remained open or was filled by a similarly qualified applicant or employee outside of the protected class. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004). If the plaintiff makes this showing, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. Id. Once the employer comes forward with such a reason, "the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006). This "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks and alteration omitted).

In this case, the court agrees with the defendant that Christmas is unable to establish a prima facie case of discrimination. The undisputed evidence establishes that the sleep position that Christmas performed at 1014 Locust was eliminated, and that it was not filled by another employee. It is also uncontested that the only other sleep position at the group home, which was held by a white male, was also eliminated. Consequently, Christmas cannot show that she was treated differently than a similarly situated individual from outside her protected class and, thus, is unable to establish a prima facie case of discrimination.

Moreover, even if Christmas could establish a prima facie case of discrimination, the Arc has articulated a legitimate, non-discriminatory reason for eliminating her sleep position. According to an affidavit signed by T. Lee Covington, the former executive director, Covington, in

7

collaboration with Arc managers, decided that it was in the best interests of the organization's clients to limit 1014 Locust to four residents. Because 1014 Locust operates on its own budget derived from Medicaid funding and billing guidelines, the Arc had to make staffing changes to correspond to the reduction in residential needs and the reduction in revenue generated from having only four residents. Covington ultimately "decided to eliminate the two sleep positions at 1014 Locust beginning July 1, 2009, because there was no longer a need for these positions at this group home, and the budget could not support these positions with the reduction in revenue." (Covington Aff., Docket No. 17-11.)

The Arc has clearly met its burden of proffering a permissible reason for the elimination of the plaintiff's sleep position, and the plaintiff has presented no evidence from which a reasonable jury could find that the proffered reason is mere pretext for unlawful discrimination. The only evidence submitted by Christmas consists of affidavits from herself and two other employees, which summarily state that they are "aware" of "discriminatory practices" by the Arc. (Docket No. 8-1.) Such conclusory affidavits are insufficient to defeat a motion for summary judgment. See Malghan v. Evans, 118 F. App'x 731, 733 (4th Cir. 2004) (emphasizing that the plaintiff's "own, self-serving and conclusory affidavit [was] insufficient as a matter of law to counter substantial evidence of legitimate, non-discriminatory reasons for an adverse employment action and to stave off summary judgment"); Reese v. Meritor Auto., Inc., 5 Fed. Appx. 239, 244 (4th Cir. 2001) (holding that conclusory affidavits from other employees could not create a genuine issue of material fact). Accordingly, the Arc's motion for summary judgment must be granted with respect to this claim.

8

B. <u>ADA</u>

Christmas also claims that the Arc violated the ADA by "rescind[ing]" a previous accommodation for her alleged disability, namely the sleep position at 1014 Locust. (Docket No. 1-1 at 3.) The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "'Discrimination' as used in the ADA prohibits not only disparate treatment because of an employee's disability, see <u>id.</u>, but also the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee,' <u>id.</u> § 12112(b)(5)(A) . . . ." <u>Shin v. Univ of Md. Med. Sys. Corp.</u>, 369 F. App'x 472, 479 (4th Cir. 2010).

In order to make out a prima facie case of disparate treatment on the basis of her disability, Christmas must demonstrate: (1) that she is within the ADA's protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations; and (4) that the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. <u>Rhoads v. FDIC</u>, 257 F.3d 373, 387 n.11 (4th Cir. 2001). To establish a prima facie case for failure to accommodate, Christmas must show: (1) that she is an individual with a disability within the meaning of the ADA; (2) that the employer had notice of her disability; (3) that, with reasonable accommodation, she could perform the essential functions of the position; and (4) that the employer refused to make such accommodation. <u>Id.</u>

Upon review of the record, the court concludes that Christmas has failed to establish a prima facie case of either disparate treatment on the basis of disability or failure to accommodate.

9

Assuming for the purposes of summary judgment that Christmas is within the ADA's protected class, no reasonable inference of unlawful discrimination can be drawn from the record. The evidence proffered by the Arc, which has not been refuted by the plaintiff, reveals that the sleep positions at 1014 Locust were eliminated for budgetary reasons. Moreover, both positions were eliminated, not just the position filled by Christmas. Additionally, Christmas was offered another shift at 1014 Locust and she continued her employment with the Arc until January of 2010, when she resigned. The court is convinced that no reasonable inference of disability discrimination can be drawn from these facts and, thus, that Christmas is unable to establish a prima facie case of disparate treatment.

To the extent the plaintiff's claim is one for failure to accommodate, the court concludes that she has failed to show that she was denied a reasonable accommodation by the Arc. See Rhoads, 257 F.3d at 387 n.11. While Christmas contends that the Arc should have accommodated her disability by allowing her to remain in a sleep position, she is unable to establish that this requested accommodation was reasonable. The Arc was not required to fund a sleep position at 1014 Locust when it was no longer financially feasible to do so, or remove another employee from one of the remaining four sleep positions at another group home in favor of Christmas. See, e.g., Lamb v. Qualex, 33 F. App'x 49, 59 (4th Cir. 2002) ("The ADA does not . . . require an employer to create a new position as an accommodation to a disabled employee."); EEOC v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001) ("The ADA does not require reassignment when it would mandate that the employer bump another employee out of a particular position."); Buckles v. First Data Resources, Inc., 176 F.3d 1098, 1101 (8th Cir. 1999) ("[A]n accommodation is unreasonable if it . . . imposes undue financial or administrative burdens.").

For these reasons, the court concludes that the Arc is also entitled to summary judgment on the plaintiff's ADA claims.

C. **FMLA**

In her final remaining claim, Christmas asserts that the defendant violated the FMLA by eliminating her sleep position while she was on FMLA leave to care for her husband. Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). It is unlawful for an employer to (a) "interfere with, restrain, or deny the exercise of" this right, or (b) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." 29 U.S.C. § 2615(a). An employee can bring an interference claim under the first prohibition or a retaliation claim under the second one. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006).

To the extent Christmas claims that the Arc interfered with the exercise of her FMLA rights when, after she took leave, it failed to restore her to her sleep position at 1014 Locust, the court concludes that the Arc is entitled to summary judgment. The FMLA does not provide for an absolute right to restoration to a prior employment position when an employee returns from FMLA leave. Id. at 547. The Act instead provides for only a "limited right to restoration." Id. In particular, an employer can avoid liability under the FMLA if it can prove that it would not have retained an employee even if the employee had not been on FMLA leave. Id. at 547, 549.

In this case, the unrefuted evidence proffered by the Arc demonstrates that the elimination of the sleep positions at 1014 Locust was a financial decision and not a personnel decision specific to Christmas. As set forth above, both sleep positions at 1014 Locust were eliminated, including

11

the one held by an employee who was not disabled or on medical leave. Because the undisputed evidence establishes that the Arc would not have retained Christmas in the sleep position at 1014 Locust even if she had not taken FMLA leave, the court concludes that the Arc is entitled to summary judgment on the plaintiff's interference claim. See Id. at 550 (holding that the district court did not err in granting summary judgment to the defendant on the plaintiff's interference claim, where the plaintiff failed to "refute the evidence submitted by [the defendant] demonstrating that its reorganization was legitimate and that it would have discharged [the plaintiff] even if he had not taken leave").

To the extent Christmas claims that the Arc retaliated against her for taking FMLA leave, the court likewise concludes that the Arc is entitled to summary judgment. FMLA claims arising under a retaliation theory are analyzed under the burden-shifting framework of McDonnell Douglas, supra. Id. at 551. Thus, if Christmas "puts forth sufficient evidence to establish a prima facie case of retaliation" and the Arc "offers a non-discriminatory explanation" for its employment decision, Christmas "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Id. (quoting Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001) (internal quotation marks omitted)).

As discussed above, the Arc has presented evidence demonstrating that its decision to eliminate the sleep positions at 1014 Locust was based solely on financial concerns. In the absence of any evidence that would create a genuine issue of material fact regarding the legitimacy of the Arc's decision, the court concludes that the Arc is also entitled to summary judgment on the plaintiff's retaliation claim.

For these reasons, the court will grant the Arc's motion for summary judgment.

## Motion to Amend

On February 11, 2013, Christmas moved for leave to amend her pleadings to add the EEOC and Irma Dillard, the EEOC mediator, as party defendants. In the motion, the plaintiff alleges that Dillard engaged in "malfeasance and misfeasance" by failing to amend the plaintiff's charge of discrimination in response to the letter from Dr. Gates, and that the alleged misconduct gives rise to a cause of action under the Federal Tort Claims Act. (Docket No. 20 at 2.) The Arc opposes the motion on the basis that the proposed amendment would be prejudicial and futile.

Under Rule 15(a) of the Federal Rules of Civil Procedure, Christmas can amend her complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend should be freely given when justice so requires, a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). Specifically, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Id.

Having reviewed the plaintiff's motion, the court concludes that it must be denied because the proposed amendment would be futile. The Federal Tort Claims Act ("FTCA") provides a limited waiver of immunity for actions in tort against the United States for the negligence of federal employees. See 28 U.S.C. § 1346(b). Neither federal agencies, such as the EEOC, nor federal employees, such as Dillard, can be named as a defendant to an FTCA claim. Instead, the United States is "the only proper defendant." Webb v. Hamidullah, 281 F. App'x 159, 161 n.4 (4th Cir. 2008) (citing 28 U.S.C. § 2674).

13

Even if the plaintiff had requested leave to amend her complaint to add the United States as a defendant, her proposed claim could not go forward, because she has not alleged that she exhausted her administrative remedies. As a prerequisite to filing suit under the FTCA, a plaintiff must first present her tort claim to the appropriate administrative agency. 28 U.S.C. § 2675(a); see also 28 C.F.R. § 14.2(a) (specifying the procedure for filing an administrative claim with a federal agency). The requirement of filing an administrative claim is jurisdictional and cannot be waived. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994).

Additionally, the waiver of sovereign immunity afforded by the FTCA is subject to exceptions. "The most important of these [exceptions] . . . is the discretionary function exception," McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004), which provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused," 28 U.S.C. § 2680(a). When the discretionary function exception applies, federal courts lack subject matter jurisdiction over the claim. See Williams v. United States, 50 F.3d 299, 304-305 (4th Cir. 1995). "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's exceptions apply to [her] particular claim." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005).

In this case, Christmas has not alleged or provided any evidence that she presented her tort claim to the EEOC, as required by 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2. Moreover, it appears that the discretionary function exception would apply to the proposed claim as alleged, since it relates to the EEOC's processing of her charge of discrimination. See Martinez v. United States, 192 F. App'x 839, 842 (11th Cir. 2006) (holding that "[t]he EEOC's function of processing

14

a charge of discrimination is the kind of administrative decisionmaking that Congress intended to shield from tort liability" under the discretionary function exception).

For these reasons, the court concludes that the proposed amendment would be futile. Accordingly, the court will deny the plaintiff's motion for leave to amend her complaint to include a federal tort claim.

## Conclusion

For the reasons stated, the court will grant the defendant's motion for summary judgment and deny the plaintiff's motion for leave to amend her complaint. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 27th day of February, 2013.

/s/ Glen Conrad
Chief United States District Judge